**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| JAMINTON R. B.,[1] | Case No. 26-CV-3091 (ECT/JFD) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| MARKWAYNE MULLIN, et al., | |
| Respondents. | |

Petitioner Jaminton R.B. has filed an Amended Petition for Writ of Habeas Corpus (Dkt. No. 6), pursuant to 28 U.S.C. § 2241.[2] That petition has been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. Petitioner claims that he is being unlawfully detained in violation of his Fifth Amendment right to Due Process, *see Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent"), and his Fourth Amendment right to be free from unreasonable seizures. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) ("'[T]he people' protected by the Fourth Amendment … refers to a class of persons who are part of a national community or who

---

[1] This District has adopted a policy of using only the first name and last initial of nongovernmental parties in immigration cases.

[2] The Court refers exclusively to the Amended Petition, filed at Docket Number 6, but as the parties agree, there is no substantive difference between the original and the amended petitions.

have otherwise developed sufficient connection with this country to be considered part of that community."). Petitioner seeks immediate release from custody, or, in the alternative, a bond hearing on his continued detention. Because the Court finds that Petitioner's arrest violated his Fourth Amendment right to be free from unreasonable seizures, the Court recommends that the petition be granted and Petitioner be immediately released. The Court does not reach Petitioner's arguments regarding his Fifth Amendment Due Process rights.

## I.   **Background**

Petitioner is a citizen of Colombia who entered the United States without inspection or admission on February 17, 2024. (Am. Pet. ¶ 2, Dkt. No. 6.) The next day, he was apprehended by immigration authorities, processed, and released on his own recognizance. (*Id.* ¶ 3.) Five months later, he applied for asylum protections under the Convention Against Torture, and the government authorized him to work in the United States while his application was processed. (*Id.* ¶ 4.) For the last two years, he has resided in Texas. (*Id.* ¶ 18.)

According to Immigration and Customs Enforcement ("ICE") Deportation Officer Jason V. Lee, Petitioner was arrested by ICE as a result of that agency's surveillance of a construction site in North Dakota. (Lee Decl. ¶ 6, Dkt. No. 8.) Officer Lee states, under penalty of perjury, that ICE identified Petitioner after running a Texas license plate number (from a car parked at the construction site) through various law enforcement databases, cross-referenced to Department of Homeland Security ("DHS") databases. (*Id.*) Officer Lee provides no date for this site surveillance. On June 8, 2026, ICE agents stopped Petitioner's car, and Petitioner provided them a valid Texas driver's license and

2

employment authorization. (*Id.* ¶ 7.) According to Officer Lee, ICE conducted further investigation over the next four days and then arrested Petitioner on June 12, 2026, once facts supporting an arrest had been developed. (*Id.* ¶ 8.) This conflicts with the Form I-200 "Warrant for Arrest of Alien," filed as Exhibit B to Officer Lee's Declaration, and the Form I-213 Report, filed as Exhibit C, both of which are dated June 8. In other words, the Form I-200 shows that the decision to arrest Petitioner was made on the same day he was encountered at the construction site, and not after four days of additional investigation, as Officer Lee's Declaration states. Petitioner is currently in immigration custody at the Kandiyohi County Jail in Willmar, Minnesota. (Am. Pet. ¶¶ 1, 6, Dkt. No. 6.)

## II.   **<u>Discussion</u>**

The Court finds Officer Lee's account in his Declaration to be not credible. His written statement conflicts with the documents that he attached to *his own* Declaration. Further, because Respondents insist on redacting the names of the officials who sign these documents, the Court cannot determine who signed these documents. In fact, from what the Court can see in the Form I-200, the name of the officer who signed that document had the initials "K.W.," which calls into question whether and to what extent Officer Lee has personal knowledge of the facts discussed in his Declaration. The evidence provided by the government through Officer Lee therefore has very little, if any, evidentiary value.

This conclusion leaves the Court very little reliable factual information about what occurred. The Court has no clear picture as to when Petitioner was arrested or when the Form I-200 "warrant" was issued. These are key questions in determining whether the government violated Petitioner's Fourth Amendment right to be free from unreasonable

searches and seizures. There are three Fourth Amendment issues to be addressed here: 1) whether Form I-200 administrative "warrants" can qualify as constitutionally valid warrants for Fourth Amendment purposes; 2) whether the specific Form I-200 issued in this case is procedurally valid; and 3) whether the administrative warrant was issued after Petitioner was arrested; if it did, Petitioner was arrested without a warrant. The first question is a legal one that has seen very little specific judicial input, the second has been discussed extensively in recent months by courts in this District, and the third requires the Court to make factual determinations as to the timing of various documents pertaining to Petitioner.

### A. General Adequacy of Form I-200 Administrative Warrants

There is no clear, binding precedent on whether an otherwise error-free administrative warrant, typically issued as a Form I-200, is constitutionally sufficient for Fourth Amendment purposes. The Court recommends finding that a Form I-200 administrative warrant is of limited constitutional utility and is not a "warrant" for Fourth Amendment purposes, under controlling caselaw. The Supreme Court has held that,

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. *Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer* engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. *When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.*

*Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971) (emphasis added). The very nature of administrative warrants supplants the role of the "neutral and detached magistrate" mandated by *Coolidge* and replaces the judge with a supervisor of the officer seeking the warrant. An I-200 administrative "warrant" is a warrant that law enforcement issues to itself, the very scenario *Coolidge* forbids. While some courts have accepted that an I-200 administrative warrant is generally valid, courts have frequently found I-200 administrative warrants constitutionally deficient for a number of reasons, more than one of which is present in this case.

### B.  Adequacy of the Administrative Warrant in this Case

In assessing similar cases, other courts have found administrative warrants to be valid in limited circumstances. Many courts in this District have found administrative warrants with "facial errors" invalid. *See Jose L.B. v. Bondi*, No. 26-CV-2119 (KMM/EMB), 2026 WL 1484689, at *5 (D. Minn. Apr. 28, 2026) (collecting cases). Those facial errors include illegible signatures, a blank interpreter's signature line, an inadequate basis for probable cause, a lack of knowledge by the signatory of the facts surrounding the warrant's preparation, "not insignificant" discrepancies, significant omissions, and post-arrest warrant issuance. *Id*. Many of these issues exist here. Neither of the signatures on the I-200 are legible, and the typed name of the issuing officer is redacted. (Lee Decl. Ex. B, Dkt. No. 8-2.) The "name or number" of the interpreter who read the warrant to petitioner is blank, even though it purports to have been read to Petitioner in Spanish.[3] (*Id*.)

---

[3] Of course, it is possible that the serving officer could have read the warrant in Spanish himself, but the Court has no way of knowing whether that occurred because the name of

And, as discussed above, there are significant discrepancies between Officer Lee's statements (made under penalty of perjury) and the documents he, himself, provided. These discrepancies also make it impossible to know the timing of the issuance of the warrant relative to Petitioner's arrest, as discussed below. These "facial errors" alone provide grounds to find Petitioner's arrest unconstitutional and order his release. *Jose L.B.*, 2026 WL 1484689, at *5 (D. Minn. Apr. 28, 2026).

Additionally, the Court is concerned that ICE did not follow the proper order of document service in this case. In *Castanon Nava v. Dep't of Homeland Sec.*, the U.S. District Court for the Northern District of Illinois determined that ICE lacks authority to issue I-200 administrative warrants without "concurrent or prior issuance of a Notice to Appear." 806 F. Supp. 3d 823, 853 (N.D. Ill. 2025). At least three courts in this District have relied on *Castanon Nava* to find warrants invalid when no corresponding Notice to Appear was filed. *See e.g.*, *Oscar R.R.G. v. Bondi*, Case No. 26-CV-1204 (JRT/SGE) (D. Minn. Feb. 13, 2026); *Enyer O.L. v. Bondi*, Case No. 26-CV-1078 (MJD/SGE) (D. Minn. Feb. 15, 2026); *Jose L.B., v. Bondi*, Case No. 26-CV-2119 (KMM/EMB), 2026 WL 1484689, at *6 (D. Minn. Apr. 28, 2026). Here, a Notice to Appear was issued in February 2024, when Petitioner was originally apprehended in Texas at the border, for an immigration hearing to be held in December 2025. (Lee Decl. Ex. A, Dkt. No. 8-1.) No such Notice was issued in 2026, before the government detained him in North Dakota.

---

the officer is redacted, the signature is illegible, and no information is provided about the officer's ability to speak Spanish.

The government appears to be arguing, *post hoc*, that the Notice to Appear issued in February 2024 for a hearing in Texas in 2025 provided the requisite notice to support the warrant issued in June 2026, after ICE encountered Petitioner in North Dakota. It also seeks to use an unsupported insinuation that Petitioner may not have appeared at that hearing to rationalize his current detention, based on a lack of documentation of his appearance at a hearing. (Resp. 2, Dkt. No. 7 (citing Lee Decl. ¶ 6, Dkt. No. 8).) The Court cannot accept those arguments.

The original Notice to Appear listed a specific time and place for an immigration hearing; 9:00 A.M. on December 24, 2025, at the immigration court in San Antonio, Texas. (*Id*.) There is no evidence that Petitioner failed to appear at that hearing, and the Court finds the government's claim that he might not have to be mere insinuation.  The Notice to Appear states that, if a person fails to appear, "a removal order may be made by the immigration judge in [their] absence, and [they] may be arrested and detained by the DHS." (Lee Decl. Ex. A, Dkt. No. 8-1.) No such removal order exists in the record vis-à-vis the scheduled 2024 hearing, which the Court takes as circumstantial evidence that Petitioner appeared in San Antonio as ordered, and there is nothing in the record to affirmatively show that Petitioner failed to appear. To the extent the government seeks to rationalize Petitioner's arrest by arguing that he failed to appear at the initial hearing, the Court finds that argument unsupported by the facts in the record. This is especially so because immigration courts are a component of the Justice Department and it is thus the government itself that generates and maintains the very records upon which one ought to be able to rely to determine whether Petitioner appeared as ordered.

Even if Petitioner failed to appear at the first hearing in Texas, the initial Notice to Appear served in February 2024 does not serve as a proper predicate Notice for the I-200 administrative warrant issued for his arrest in June 2026, 15 months later. A Notice to Appear is inherently time-limited because it lists a specific date and time for the subject to appear before an immigration judge. Allowing a Notice to Appear to have any legal significance beyond the date listed for the hearing is simply unfair, as one cannot appear for a hearing that has already happened. Further, the government has remedies at its disposal if a person fails to appear for an immigration hearing, as stated in the Notice itself. (Lee Decl. Ex. A, Dkt. No. 8-1.) The Notice to Appear is specific to the hearing identified in it and cannot logically serve as a predicate to any future administrative warrant. Such a conclusion would undermine the purpose of a Notice to Appear and should be rejected. Accordingly, the Court concludes that the I-200 immigration "warrant" issued in relation to Petitioner's arrest is invalid.

### C. Warrant Issuance Timing

Even assuming the administrative warrant discussed above is sufficient to survive Fourth Amendment scrutiny, at least in the civil immigration context, there remains the question of whether it was issued before Petitioner's arrest. A Form I-200 administrative warrant must be issued before an arrest and detention pursuant to § 1226, not after. If the I-200 is issued after arrest and detention, then the arrest is a warrantless one. *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *see also Marleni S.B. v. Bondi*, No. 26-CV-1707 (DWF/ECW), 2026 WL 710624, at *3 (D. Minn. Mar. 13, 2026); *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL

1229701, at *2 (D. Minn. May 5, 2026). "The remedy for a warrantless arrest is immediate release." *Marleni S.B.*, 2026 WL 710624, at *4; *see Ahmed M.*, 2026 WL 25627, at *3 (noting that release is the appropriate remedy when a petitioner's detention lacks a lawful basis).

In non-immigration civil cases, the Eighth Circuit has placed the ultimate burden of *proof* regarding the constitutionality of a warrantless seizure on the plaintiff, but the burden of *production* lies with the defendant government entity. *See Der v. Connolly*, 666 F.3d 1120, 1128 (8th Cir. 2012). Applying those burdens here, Petitioner must ultimately persuade the Court that his arrest was unconstitutional, but only after the government produces "evidence to meet or rebut the presumption" that warrantless arrests are unreasonable. *Id*. (citing *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir.1997)). The government has failed to do so. The evidence provided consists only of Officer Lee's declaration and the attached documents, which the Court has found not to be credible or reliable. Accordingly, the Court recommends that the petition be granted because the government has not met its burden to produce evidence that Petitioner's arrest was reasonable under the Fourth Amendment.

The Court notes the abbreviated timeline set forth below for filing objections and responses to any objections. **Any objections to this Report & Recommendation are due by July 20, 2026. Responses to any objections are due by July 27, 2026.**

III.   <u>Conclusion</u>

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the relief requested in the Petition (Dkt. Nos. 1, 6) be **GRANTED** and Petitioner be ordered immediately released from immigration detention.

Date: July 14, 2026

_s/ John F. Docherty_
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. A party may file and serve specific written objections to these proposed findings and recommendations by **Monday, July 20, 2026**. A party may respond to those objections by **Monday, July 27, 2026**. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).