UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jaminton R.B., | File No. 26-cv-3091 (ECT/JFD) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; David Venturella, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; Todd Blanche, *in his official capacity as Attorney General of the United States*; Marcos Charles, *in his official capacity as Acting Executive Associate Director for ICE Enforcement and Removal Operations*; Todd M. Lyons, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; and Eric Tollefson, *in his official capacity as Sheriff of Kandiyohi County*, | |
| Respondents. | |

Magistrate Judge John F. Docherty issued a Report and Recommendation dated July 14, 2026. ECF No. 11. Judge Docherty recommended that Petitioner Jaminton R.B.'s Amended and Verified Petition for Writ of Habeas Corpus [ECF No. 6] be granted, and that Jaminton be released. ECF No. 11. Respondents[1] objected to the Report and

---

[1] "Respondents" refers to Secretary Mullin, Acting Director Venturella, Attorney General Blanche, Acting Executive Associate Director Charles, and Director Lyons. Kandiyohi County Sheriff Eric Tollefson has not appeared in these proceedings.

Recommendation, ECF No. 12, triggering de novo review pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3). Familiarity with the Report and Recommendation is presumed.

Jaminton is a citizen of Columbia. Am. Pet. ¶ 6. He entered the United States without inspection or admission at El Paso, Texas, on February 17, 2024. *Id.* ¶ 2. The next day (presumably after being detained for a brief period), Jaminton was released on his own recognizance, ECF No. 1-4, and issued a Form I-862 Notice to Appear before an immigration judge in San Antonio on December 24, 2025, at 9:00 a.m., ECF No. 8-1. The record lacks evidence showing one way or the other whether Jaminton appeared for that hearing or what the hearing's outcome might have been, and no subsequent Notice to Appear that might have been issued to Jaminton is in the record. Jaminton alleges he "applied for asylum, withholding of removal, and protections under the Convention Against Torture" and that the Department of Homeland Security approved his application for employment authorization based on his pending asylum application. Am. Pet. ¶ 4.

The events that resulted in Jaminton's detention and prompted this habeas proceeding are not clear because the evidence Respondents submitted to oppose Jaminton's petition is internally inconsistent or incomplete in several important respects:

(1) We don't know when Jaminton was arrested. In a declaration, Deportation Officer Jason Lee testified that officers with Immigration and Customs Enforcement and the Office of Enforcement and Removal Operations (together "ICE/ERO") stopped the vehicle Jaminton was driving on June 8, 2026. ECF No. 8 ¶ 7. Officer Lee testified, however, that Jaminton was not taken into custody until June 12, 2026, after "ICE/ERO

2

conducted record checks in Department of Homeland Security databases, with biometric confirmation of identity and interview which indicated that Petitioner was an unlawfully present alien." *Id.* ¶ 8.[2] By contrast, in an unidentified officer's report of the June 8 stop of Jaminton's vehicle, the officer wrote that Jaminton was arrested that same day, contemporaneously with the vehicle stop. ECF No. 8-3 at 2.[3]

(2) We don't know who arrested Jaminton. Officer Lee testified that on June 12, 2026, an unnamed "Supervisory Detention and Deportation Officer . . . took Petitioner into custody and transported [him] to Grand Forks, North Dakota for further administrative processing." ECF No. 8 ¶ 8. In the report of the June 8 vehicle stop, the unidentified

---

[2]     As part of their objections to the Report and Recommendation, Respondents submitted the declaration of another Deportation Officer, Officer Benjamin Northwood. ECF No. 13. In his declaration, Officer Northwood testified that Officer Lee's reference to June 12 in his earlier declaration "was a scrivener's error." *Id.* ¶ 4. Officer Northwood included a corrected paragraph in his declaration (referencing the June 8 date) intended to replace the assertedly incorrect paragraph in Officer Lee's earlier declaration (referencing the June 12 date). If Officer Lee made a scrivener's error, then Officer Lee should have corrected it, or at least Respondents should have explained why Officer Lee might not have been available to do that. Without more in the way of explanation, Respondents cannot replace testimony in one witness's declaration with a different witness's declaration testimony. *See Larry v. City of Mobile Ala.*, No. 1:19-CV-1008, 2021 WL 5167293, at *5 (S.D. Ala. Nov. 5, 2021), *aff'd*, No. 22-11697, 2023 WL 4541020 (11th Cir. July 14, 2023) ("Plaintiff cannot use the testimony of others to modify his own testimony."); *see also English v. Davis*, No. 2:15cv68, 2017 WL 951389, at *5 (N.D. Ind. Mar. 10, 2017) ("[I]f English wishes to present the testimony of anyone else, he cannot put that testimony in his own declaration. Rather, he must present an affidavit or declaration from each of those persons."); *United States v. Gee*, No. 4:07cr40, 2013 WL 154141, at *2 (N.D. Fla. Jan. 14, 2013) ("[A] witness cannot properly testify that another witness's statements or testimony were given honestly.")

[3]     Page citations are to pagination assigned by the court's CM/ECF system appearing in a document's upper right corner, not to a document's original pagination.

officer wrote that "Officer Fleck and Agent Ritz placed [Jaminton] under arrest," handcuffed him, and escorted him to an ICE/ERO vehicle as part of the stop. ECF No. 8-3 at 2.

(3) We don't know where Jaminton was arrested. Officer Lee doesn't say specifically, though if the arrest occurred on June 12 as Officer Lee testified, it almost certainly did not happen at the site of the traffic stop. ECF No. 8 ¶ 8. No record evidence shows or suggests that a separate traffic stop occurred on that date. The unidentified officer's report indicates that Jaminton was arrested after "Officer Lee observed a vehicle . . . exit I-94 on to North Dakota Highway 200 and continue to travel Westbound on North Dakota Highway 200." ECF No. 8-3 at 2. There's a problem with this description—I-94 and North Dakota Highway 200 don't intersect. Rand McNally, Large Scale Road Atlas 150–51 (2025). Leaving that problem aside, the unidentified officer reported that the arrest occurred "near the intersection of North Dakota Highway 200 and 154th Ave. NE Mayville, North Dakota." ECF No. 8-3 at 2. The report cannot be reconciled with Officer Lee's declaration testimony.

(4) We don't know whether or when Jaminton may have been served with a warrant. Officer Lee testified that the unnamed Supervisory Detention and Deportation Officer issued a Form I-200 arrest warrant on June 12, "after ICE/ERO conducted record checks in Department of Homeland Security . . . databases, with biometric confirmation of [Jaminton's] identity and interview which indicated that [Jaminton] was an unlawfully present alien." ECF No. 8 ¶ 8. Officer Lee testified that the unnamed Supervisory Detention and Deportation Officer then served Jaminton with the warrant before taking

4

him into custody. *Id.* Again, the unidentified officer's report of the June 8 traffic stop says something very different. It indicates that Officer Fleck served Jaminton with a Form I-200 arrest warrant soon after arresting and handcuffing Jaminton. ECF No. 8-3 at 2. The Form I-200 arrest warrant attached as an exhibit to Officer Lee's declaration does not resolve these discrepancies. It is dated June 8 and identifies June 8 as the date it was served. ECF No. 8-2 at 1. At the same time, however, the warrant indicates that the probable-cause determination on which the warrant was issued was based on "biometric confirmation of the subject's identity." *Id.* Biometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic (such as fingerprints). *Biometrics*, *The American Heritage Dictionary of the English Language* (5th ed.), https://www.ahdictionary.com/word/search.html?q=biometrics (last visited Aug. 13, 2026) (defining biometrics as "[t]he statistical study of biological phenomena" and "[t]he measurement of physical characteristics, such as fingerprints, DNA, or retinal patterns, for use in verifying the identity of individuals"); *Biometric*, *Oxford English Dictionary* (2d ed.), https://www.oed.com/dictionary/biometric_adj?tab=meaning_and_use#20350778 (last modified Dec. 2025) (last visited Aug. 13, 2026) (defining biometric as "[a] unique physical or behavioural characteristic that can be used to identify an individual, typically for the purposes of security."); *see also id.* (providing the following examples of a physical biometric: fingerprint, iris pattern, or ear shape). The Department of Homeland Security's description of biometrics matches these definitions. Dep't of Homeland Sec., Biometrics, https://www.dhs.gov/biometrics (last visited Aug. 13, 2026) ("Biometrics is the automated recognition of individuals based on their biological and behavioral characteristics from

5

which distinguishing, repeatable biometric features can be extracted for the purpose of biometric recognition. These characteristics, often called modalities, include—but are not limited to—fingerprints, iris patterns, or facial features that can be used for automated recognition."). The record contains no information showing that biometric confirmation of Jaminton's identity occurred on or before June 8.

(5) We probably know why officers stopped Jaminton on June 8, but even that could be clearer. In his declaration, Officer Lee testified that, at some point prior to June 8 (he doesn't say when), "ICE/ERO had been conducting surveillance at a construction site." ECF No. 8 ¶ 6. "ICE/ERO ran the license plate of a vehicle, and the plates came back as being registered to [Jaminton]." *Id.* In other words, based on this information, ICE/ERO had reason to suspect Jaminton was in the area working a construction job. The report of the June 8 traffic stop says something consistent, if not as specific. It says that, prior to the stop, "ICE ERO had previously developed a list of targets and target vehicles for future arrests." ECF No. 8-3 at 2. Though there's room for misunderstanding, it seems reasonable to conclude that the license plate scanning Officer Lee described in his declaration was the tactic by which ICE/ERO developed the target list described in the unidentified officer's report of the June 8 traffic stop.

The question is how the discrepancies described above bear on Jaminton's petition. Judge Docherty's answer was to find that Officer Lee's testimony and the exhibits attached to it did not credibly show that ICE/ERO issued a warrant prior to Jaminton's arrest or that Jaminton was served with a warrant at or around the time he was arrested, ECF No. 11 at

6

8–9, meaning this evidence did not credibly rebut the Petition's allegation that Jaminton was arrested without a warrant, Am. Pet. ¶¶ 74–80.

Whether viewed as a factual determination, a legal conclusion, or a combination of the two, I agree with this answer. Officer Lee's testimony (given under penalty of perjury) that Jaminton was arrested with a warrant on June 12 is not supported by any of the exhibits Officer Lee attached to his declaration. As described above, the exhibits cast substantial doubt on the accuracy of Officer Lee's testimony in several material respects. In another case, it might make sense to trust the exhibits, but I conclude that would be unwise here. No officer who was involved in the June 8 vehicle stop of Jaminton has testified to the exhibits' authenticity or truthfulness, meaning the exhibits lack important foundation. That problem aside, the arrest warrant indicated it was issued after "biometric confirmation" of Jaminton's identity, but no witness has testified regarding when or how that may have occurred, and it is difficult to conceive how that testing might have happened given the event sequence described in the report of the June 8 vehicle stop. Again, the report seems to say something very different. It implies that Jaminton was identified, stopped, and arrested based—not on biometric data—but on a scan of his license plate. ECF No. 8-3 at 2. Judge Docherty was right to conclude that this information did not rebut the Petition's allegation that Jaminton was arrested without a warrant. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1); *C. C. v. Blanche*, No. 26-cv-3220 (LMP/SGE), 2026 WL 2137334, at *2 (D. Minn. July 24, 2026) (citing cases recognizing that warrant must be issued prior to arrest).

There is a fallback, but Respondents don't meet it.  8 U.S.C. § 1357 provides:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2).  The Supreme Court has not construed "likely to escape," but it treats that circumstance as "specific" and "limited."  *Arizona v. United States*, 567 U.S. 387, 410 (2012).  Persuasive authorities interpret the phrase to mean, "likely to evade detention by immigration officers."  *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (collecting cases); *see Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (interpreting it to mean that an arrestee is likely to "disappear before a warrant could be obtained"); *Araujo v. United States*, 301 F. Supp. 2d 1095, 1102 (N.D. Cal. 2004) (finding no likelihood of escape where arrestee was living with his wife and had applied for lawful permanent resident status, "hardly evincing an intention to flee").  The requirement "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizens at another clearly identifiable location."  *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE),

2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (citation modified).  Importantly, the probable-cause standard requires that "the totality of the circumstances known to all officers involved at the time of the arrest" indicated to a "prudent person[]" that the noncitizen was likely to escape.  *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008) (citation modified); *see United States v. Puebla-Zamora*, 996 F.3d 535, 538 (8th Cir. 2021) (applying probable-cause standard to § 1357(a)(2) arrest).

Respondents have not shown that Jaminton was "likely to escape before a warrant [could] be obtained for his arrest." 8 U.S.C. § 1357(a)(2).  Respondents argue there was probable cause to believe Jaminton was likely to escape because Jaminton "consistently failed to report into ICE as part of his [order of release on recognizance]."  ECF No. 7 at 16.  To support this assertion, Respondents cite a statement appearing in the report of the June 8 vehicle stop asserting "there is no documented evidence of [Jaminton] ever reporting into ICE ERO as part of his [order of release on recognizance]."  ECF No. 8-3 at 2.  This is not persuasive.  No evidence supports this assertion.  No document, for example, identifies a report Jaminton was required to make but did not.  Officer Lee said nothing about this issue in his declaration.

Respondents' other fallback is that they did not need a warrant to arrest Jaminton because he was subject to mandatory detention under 8 U.S.C. § 1225 and that § 1357(a)(2) does not apply to § 1225 detentions.  The great weight of persuasive authority from this District supports that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357.  *See, e.g.*, *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 8 (D. Minn. May 26, 2026), ECF No. 9 ("ICE [cannot] simply arrest anyone who is subject to

9

mandatory detention. Rather, ICE could detain [petitioner] only if it first complied with 8 U.S.C. § 1357(a), which addresses federal immigration officials' authority to make warrantless arrests." (citation modified)); *Juan J.M.E. v. Easterwood*, No. 26-cv-2270 (KMM/EMB), 2026 WL 1746672, at *3 (D. Minn. June 8, 2026) ("[I]f Congress wanted to make clear that 1225(b) provided a separate basis to arrest a noncitizen, 'it could have easily done so.'" (quoting *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026), *reh'g and reh'g en banc denied sub nom.*, 2026 WL 1746744 (8th Cir. June 17, 2026))), *R. & R. adopted sub nom. Juan M.E. v. Easterwood*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Francisco M.A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026); *Fernando C. C. v. Bondi*, No. 26-cv-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026); *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026); *see also Espinoza-Avalos v. Blanche*, No. 8:26CV191, 2026 WL 1396593, at *2 (D. Neb. May 19, 2026). I agree with these decisions.

Because I conclude Jaminton was not served with a warrant at the time of his arrest, and because Respondents have not shown that his arrest complied with § 1357(a)(2), Respondents' objections will be overruled, the Report and Recommendation will be accepted, and Jaminton will be ordered released. *See Felix Alberto J.M. v. Blanche*, No. 26-cv-2944 (LMP/DLM), 2026 WL 1906596, at *1, *3–5 (D. Minn. July 2, 2026); *Walther A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *4 (D. Minn. June 16, 2026); *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 9 (D. Minn. May 26, 2026), ECF No. 9; *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL

10

1862252, at *2–3 (D. Minn. June 29, 2026).  The resolution of this issue in Jaminton's favor makes it unnecessary to consider or adopt the Petition's remaining grounds.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT**:

1.   The Report and Recommendation [ECF No. 11] is **ACCEPTED** as described above.

2.   Petitioner Jaminton R.B.'s Amended and Verified Petition for Writ of Habeas Corpus [ECF No. 6] is **GRANTED**.

3.   Respondents shall release Petitioner Jaminton R.B. from immigration custody immediately.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 13, 2026                    s/ Eric C. Tostrud
                                          Eric C. Tostrud
                                          Chief Judge, United States District Court